NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JOSEPH JACOB, | : |
| Plaintiff, | : Civil No. 16-5376 (RBK/JS) |
| v. | : **OPINION** |
| BOROUGH OF LINDENWOLD, *et al.*, | : |
| Defendant(s). | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon defendants Borough of Lindenwold, Thomas J. Brennan, and Ronald D. Burrows, Jr.'s Motion for Summary Judgment (Doc. No. 46). For the reasons discussed below, the motion is **GRANTED**.

**I.     BACKGROUND**

Jurisdiction

Plaintiff Joseph Jacob's ("Plaintiff") claims arise under the Laws and Constitution of the United States. As such, this Court has jurisdiction pursuant to 42 U.S.C. § 1983. Venue is proper pursuant to 28 U.S.C. § 1391(a)—the underlying facts occurred in this district, the Borough of Lindenwold is located within this district, and Plaintiff is a resident of this district.[1] (Am. Compl. at 1-2).

---

[1] Defendants Ronald Burrows, Thomas J. Brennan, and John Does (1-10) likely reside in this district or nearby as they serve as Lindenwold police officers. (Am. Compl. at 2).

Factual Background

This case arises from a narcotics bust in the Arborwood Condominiums in Lindenwold, New Jersey. (Am. Compl. at 3[2]; Def. Mot. at 2). In June 2014, the Lindenwold Police Department ("LPD") began investigating the sale of narcotics from Unit 1701 of the Arborwood Condominiums ("Condominium").[3] (Def. Mot. at 2). The investigation began as the result of information provided by two separate confidential informants who alerted the LPD to the sale of heroin and crack cocaine from the Condominium. (*Id.*). As a result of this tip, Detective Burrows conducted surveillance on the Condominium. (*Id.*). He observed multiple unidentified individuals quickly enter and exit the premises—behavior consistent with narcotics sales. (*Id.*; Statement of Material Facts[4] ("SMF") ¶ 4). On July 6, 2014 and July 13, 2014, the LPD completed two controlled purchases of narcotics from the Condominium. (Def. Mot. at 2; SMF ¶ 5). As a result of this investigation, Detective Burrows applied for and was granted a "no-knock" search warrant. (Def. Mot. at 2; SMF ¶ 6-7).

The Condominium is approximately 600 to 800 square feet and leased to Kevin Croxton ("Croxton"). (Def. Mot. at 2; SMF ¶ 8). It consists of a living room with a closet, a small kitchenette, a full bathroom, and a single bedroom with a walk-in closet. (SMF ¶ 9). The entrance provides access to the living room and kitchenette,and access to the bedroom and bathroom is through a small hallway attached to the living room. (Def. Mot. at 2; SMF ¶ 10-11).

On July 23, 2014, Plaintiff arrived at the Condominium between 9:30 and 10:00 am. (Def. Mot. at 2; SMF ¶ 12). Plaintiff remained in the Condominium for the next four hours with

---

[2] The amended complaint does not include page numbers. Page one, for this Court's purposes, is the cover page of Doc. No. 34. Numbering proceeds from there.
[3] Located at 511 East Gibbsboro Road, Lindenwold, New Jersey 08201. (Def. Mot. at 1).
[4] For the purposes of deciding this motion, we use only the material facts deemed admitted by Plaintiff or Plaintiff's version of events.

Croxton. (Def. Mot. at 2; SMF ¶ 13). At approximately 1:40 pm, the Camden County SWAT Team announced their presence and breached the Condominium's door. (Def. Mot. at 2; SMF ¶ 14). Plaintiff and Croxton, who had both been in the bedroom, ran to the living room to see what was going on, but retreated once they saw the SWAT team. (Def. Mot. at 3; SMF ¶ 16-18). Plaintiff, Croxton, and an additional individual named Alisha Patterson were secured in the bedroom by the SWAT team. (Def. Mot. at 3; SMF ¶ 19).

The parties dispute what happened next. Defendants maintain that the SWAT Team turned the Condominium over to the LPD at 2:00 pm. (Def. Mot. at 3). Plaintiff claims that the transition did not occur until 3:00 pm. (Plaintiff's Statement of Disputed Facts ("PSDF") ¶ 2-3). Plaintiff further states that this additional time "would have afforded the SWAT [T]eam ample time to search the entire premises and move items of contraband from secreted locations to observable locations." (Pl. Opp. at 4). Plaintiff testified that photos shown at depositions did not depict the condition of the premises before the raid and that there were items strewn about. (*Id.* at 5). Moreover, he testified that drawers, shown open in photographs, were not open before the raid. (*Id.*). Finally, Plaintiff testified that at some point after the arrest, Croxton told police officers that the contraband was his. (PSDF ¶ 9).

Regardless of when the turnover occurred, the LPD's search of the Condominium found: .38 caliber ammunition; .380 caliber ammunition; 140 bags of suspected heroin; one bag of suspected cocaine; eight bags of suspected heroin stamped "CMB"; one tray with straws, rubber bands, and drug packaging materials; one tray with spoons, baggies, and packaging materials; one Tupperware container containing one pound and 3.4 ounces of suspected cocaine; 7.3 ounces of liquid Codeine Promethazine syrup; one digital scale; three cell phones; and more. (SMF ¶ 22). These items were spread out between the living room and kitchen. (SMF ¶ 24-25).

As a result of the raid, Plaintiff was charged with two counts of possession of a controlled dangerous substance ("CDS") in violation of N.J.S.A. §2C:35-10(a)(1); possession with intent to distribute between one-half ounce but less than five ounces of a CDS in violation of N.J.S.A. 2C:35-5(b)(2); possession with intent to distribute a CDS in an amount greater than five ounces in violation of N.J.S.A. 2C:25-5(b)(1); and possession with intent to distribute a CDS within 1,000 feet of Lindenwold High School in violation of N.J.S.A. 2C:35-7. (SMF ¶ 26). Plaintiff was processed and held in the Camden County jail in default of bail where he remained for several months. (Am. Compl. at 4). On December 15, 2014, the Camden County Prosecutor's Office administratively dismissed the charges against Plaintiff because of insufficient evidence. (*Id.*).

Plaintiff's Amended Complaint includes three claims: 42 U.S.C. § 1983 False Arrest/Imprisonment (Count I); 42 U.S.C. § 1983 and State Law – Malicious Prosecution (Count II); and 42 U.S.C. § 1983 and N.J. State Law *Monell* Claim – Custom and Practice (Count III).[5] Defendant has moved to dismiss those claims. (Doc. No. 46).

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a

---

[5] Plaintiff also made vague allusions to Fifth and Fourteenth Amendment claims in his Amended Complaint. Plaintiff does not, however, "oppose dismissal of any claim under the Fifth and Fourteenth Amendments," so those are not at issue here. (Pl. Opp. at 2). Any such implied Fifth or Fourteenth Amendment claim is therefore dismissed. Plaintiff also does not oppose the dismissal of claims against Chief Brennan. (Pl. Opp. at 1-2). All claims against Chief Brennan are therefore dismissed.

verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

#### A. Plaintiff's False Arrest/Imprisonment Claim Must Be Dismissed Because Detective Burrows Had Probable Cause To Arrest Plaintiff.

To present a claim under 42 U.S.C. § 1983, a plaintiff "must establish that he was deprived of a federal constitutional or statutory right by a state actor."[6] *Koch v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). An arrest made without probable cause creates a cause of action under

---

[6] As the arresting police officer, Detective Burrows was operating as a state actor.

42 U.S.C. § 1983. *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). A plaintiff may similarly have a claim under § 1983 for false imprisonment based on detention pursuant to such a false arrest. *Groman v. Twp. Of Manalapan*, 447 F.3d 628, 636 (3d Cir. 1995); *see Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir. 1994). If, however, the arresting state actor had probable cause, a claim pursued on these grounds cannot stand.

Probable cause is a "practical, non-technical conception." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (citing *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "In dealing with probable cause, … as the very name implies, we deal with probabilities." *Gates*, 462 U.S. at 231. "[T]he evidence … must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* Probable cause turns on the assessment of probability "in particular factual contexts"—the totality of the circumstances is what matters. *Id.* at 230-31.

Presence at a location of illegal activity is not, itself, sufficient to establish the kind of particularized suspicion necessary for probable cause—there must be "some fact suggesting knowledge of the contraband above and beyond the individual's mere presence in the household." *Williams v. Atlantic City Dep. of Police*, 2010 WL 2265215, at *5-6 (D.N.J. June 2, 2010) (citing *Holmes v. Kucynda*, 321 F.3d 1069, 1081 (11th Cir. 2003); *United States v. Anderson*, 981 F.2d 1560, 1566 (10th Cir. 1992)). In this case, the nature of the evidence is overwhelming. Detective Burrows reasonably believed the Condominium was the location of frequent drug activity—LPD conducted two controlled drug buys from the Condominium, multiple informants had described it as one, and Detective Burrows had observed multiple instances of behavior of visitors consistent with drug activity. Detective Burrows observed Plaintiff at the Condominium for approximately four hours on the day of the arrest. Furthermore,

the physical evidence itself is damning: firearm ammunition, significant amounts of both heroin and cocaine (packaged for distribution on both the retail and wholesale levels), drug-packaging supplies, a scale, and multiple cell phones, amongst other things—combining to *strongly* suggest a booming drug distribution enterprise run out of the Condominium. *See United States. v. Heath*, 455 F.3d 52, 57-58 (2d Cir. 2006); *United States v. Solomon*, 29 F.3d 961, 963 n. 1 (5th Cir. 1994). Detective Burrows had no reason to believe that Plaintiff was unaware of it.

As such, the totality of the circumstances reveal the probable cause necessary to arrest[7] and subsequently confine Plaintiff—a reasonable officer could, and almost certainly would, conclude that he or she had the probable cause necessary to arrest Plaintiff based on his presence in the apartment with the aforementioned contraband and regularized drug sales, powerfully suggesting Plaintiff's knowledge of the operation.

### B. Plaintiff's Claim Of Malicious Prosecution Must Be Dismissed Because Detective Burrows Had Probable Cause To Initiate Criminal Proceedings.

To prove malicious prosecution in the Third Circuit, a Plaintiff must show:

(1) the Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the Defendants acted maliciously or for a purpose other than bringing the Plaintiff to justice; and (5) the Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Morasco*, 318 F.3d 497, 521 (3d Cir. 2003). As previously discussed, Detective Burrows had the requisite probable cause to believe Plaintiff was in possession or

---

[7] The Court notes that an argument that Croxton's confession destroys or alters Detective Burrows's probable cause is incorrect—Plaintiff testified that Croxton told police officers the contraband was his *after* the arrest. (PSDF ¶ 9). But even that distinction is inconsequential given the other evidence.

7

constructive possession of heroin and cocaine. Thus, he had the probable cause necessary to charge Plaintiff with the N.J.S.A. 2C:35-10(a)(1) violations.

To prove evidence of intent to distribute CDS, there generally must be various quantities or packages of CDS, cash, or drug paraphernalia. *Jones v. City of Vineland*, 2015 WL 4506928, at *6 2015 WL 4506928 (citing *United States v. Robinson*, 2012 WL 1671325, *20 (E.D. Pa. May 14, 2012)). There certainly were such quantities in this case. Therefore, the probable cause necessary to charge Plaintiff under N.J.S.A. 2C:35-5(b)(1) and N.J.S.A. 2C:35-5(b)(2) was present. Finally, it is undisputed that the Condominium is located within 1,000 feet of Lindenwold High School. Detective Burrows had probable cause to charge Plaintiff with N.J.S.A. 2C:35-7.

The Court also notes that Plaintiff has not submitted any evidence which would suggest or permit an inference that Defendants acted "maliciously or for a purpose other than bringing the Plaintiff to justice." *Estate of Smith*, 318 F.3d at 521.

As such, Plaintiff's Claim II must be dismissed.

### C. Plaintiff's *Monell* Claim Must Be Dismissed Because There Is No Underlying Constitutional Violation.

"Where there is no underlying constitutional violation, there can be no *Monell* claim." *Popiolek v. Twp. of Deptford*, 2015 WL 9462909, at *3 (D.N.J. Dec. 23, 2015) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). That is the position that we find ourselves in here. In order for Plaintiff to sustain a *Monell* claim, a state actor must have deprived him of a federal or statutory right. *Popiolek*, 2015 WL 9462909, at *3. Such a deprivation did not occur in this case. Plaintiff's *Monell* claim against the Borough of Lindenwold must be dismissed.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is **GRANTED**. An order follows.

Dated:   05/16/2018                                    s/Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge